

FILED

Dec 18 2019, 8:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher J. Evans
Dollard Evans Whalin LLP
Noblesville, Indiana

ATTORNEYS FOR APPELLEE

Kathryn H. Burroughs
Monty K. Woolsey
Nancy L. Cross
Cross Glazier Burroughs, P.C.
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John Henderson, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Tina Henderson, <br> *Appellee-Respondent* | December 18, 2019 <br><br> Court of Appeals Case No. <br> 19A-DC-1517 <br><br> Appeal from the Hamilton <br> Superior Court <br><br> The Honorable David K. Najjar, <br> Special Judge <br><br> Trial Court Cause No. <br> 29D05-1702-DC-1121 |

**Crone, Judge.**

## Case Summary

John Henderson ("Husband") appeals the trial court's findings of fact, conclusions thereon, and judgment ("the Order") dissolving his marriage to Tina Henderson ("Wife") and dividing their marital estate. Husband argues

that the trial court erred by including his contractual interest in certain real estate in the marital estate, valuing that real estate, and excluding certain evidence. Finding no error, we affirm.

## Facts and Procedural History

In August 2000, Husband and Wife married. Husband is a farmer, and Wife is a self-employed grant administrator. They had two children during the marriage, and Wife was pregnant when the parties' marriage was dissolved.

In March 2010, Husband entered into a contract ("the Contract") with Deborah Hoover and Ruthanne Bowser ("Sellers") to purchase 37.93 acres in Tipton ("the Real Estate") for $189,650.00, and he paid Sellers $1000 as a down payment. Amended Ex. Vol. 3 at 68 (Husband's Ex. 97).[1] Wife is not a party to the Contract. The Contract requires Husband to make annual payments of principal and interest in the amount of $15,137.76 for a term of twenty years, but denies him the "privilege of pre-payment." *Id*. at 69. Husband is also required to pay the taxes on the Real Estate and to keep the Real Estate insured. *Id*. The Contract requires Husband to use the Real Estate, and on the date the Contract was executed, Husband took "full and complete possession of the Real Estate" and obtained the right to plant crops and to perform all other functions in connection with farming the Real Estate. *Id*. at 69. The Contract prohibits

---

[1] Husband's citations to the record regarding the Contract are completely inaccurate; he cites to the wrong volumes and the wrong page numbers.

the Real Estate from being rented, leased, or occupied by any person other than Husband. *Id*. at 73. The Contract prohibits both Sellers and Husband from selling or assigning their interests in the Contract or the Real Estate without the other party's written consent, provided, however, that consent shall not be unreasonably withheld. *Id*. The Contract also prohibits Sellers from obtaining a loan secured by a mortgage on the Real Estate. *Id*. The Contract contains a forfeiture clause, which provides that if Husband fails to perform as agreed or make any payments as they become due, "the Contract shall, at the option of the Sellers, be forfeited and terminated and all payments theretofore made shall be retained by the Sellers as rent" for the use of the Real Estate. *Id*. at 74. Finally, the contract provides that upon Husband's full performance and the payment of all sums due under the Contract, Sellers agree to convey to Husband the Real Estate by warranty deed. *Id*. at 70.

[4] In February 2017, Husband filed a petition for legal separation from Wife, which was subsequently converted to one for dissolution. Husband and Wife agreed to bifurcate the dissolution proceedings, so that property issues would be decided separately from child-related issues. Mother requested findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). In December 2018, a hearing was held solely on property issues, after which, the trial court took the matter under advisement.

[5] In May 2019, the trial court issued the Order, dissolving the parties' marriage and dividing the marital estate; the child-related issues were addressed in a

subsequent order and are not in issue here. The Order provides in relevant part as follows:

> 29. Husband is party to a land contract for the purchase of 37.93 acres of real estate located on S.R. 28, in Tipton, Indiana. Husband entered into the land contract in March of 2010 and made payments during the marriage from marital assets. Husband also insured the property and paid taxes from marital assets during the marriage. Husband farms the land that he is purchasing on contract. The parties dispute the date of filing value of the real estate as well as the payoff amount.
>
> Wife contends the amount owed is $118,000 as represented by the parties on financial statements to Farmers' Bank. Husband contends the payoff balance is $139,000, which matches testimony and exhibits submitted at the final hearing by Donna Lehman, a CPA who had done work for both parties in their individual capacities as well as their business interests. A real estate appraisal by Comer Real Estate states the value of the real estate is $303,600 as of September 15, 2017. Wife contends the real estate is worth $379,300 or $10,000 per acre, which is the value the parties used on a financial statement prior to the date of filing submitted to Farmers' Bank.
>
> 30. The Court finds the value of the real estate is $303,600 and the amount owed on the property is $139,000.

Appealed Order at 7. The trial court included the value of the Real Estate and the amount due on the Contract in the marital estate and calculated the marital estate's net worth to be $903,261.03. *Id.* at 5-6, 10, 12 (findings 24 and 48). The trial court found that Husband had rebutted the presumption that an equal division of the marital estate would be just and reasonable and awarded him

55% of the marital estate and Mother 45%. The Order awarded Husband the contractual interest in the Real Estate, providing as follows: "Husband shall also be solely responsible for the remaining balance owed on [the Contract] and shall receive the contractual interest in the 37.93 acres on State Road 28 in Tipton, Indiana free and clear of any claim of Wife." *Id*. at 14. Husband was also awarded the marital residence and was ordered to refinance the mortgage and remove Wife from all liability for the mortgage. When the refinancing was completed, Wife was ordered to execute a quitclaim deed transferring her interest in the marital residence to Husband. To achieve an equitable division, Husband was ordered to pay Wife $257,504.47. Husband appeals.

## Discussion and Decision

[6] Here, the trial court entered findings of fact and conclusions thereon at Wife's request. Our standard of review is well established:

> Where the trial court has entered special findings of fact and conclusions thereon, our court will "not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). Under our … two-tiered standard of review, we must determine whether the evidence supports the findings and whether those findings support the judgment. We consider the evidence most favorable to the trial court's judgment, and we do not reweigh evidence or reassess the credibility of witnesses. We will find clear error only if the record does not offer facts or inferences to support the trial court's findings or conclusions of law.

*B.L. v. J.S.*, 59 N.E.3d 253, 258-59 (Ind. Ct. App. 2016) (citations and quotation marks omitted), *trans. denied*. We accept unchallenged findings as true. *McMaster v. McMaster*, 681 N.E.2d 744, 747 (Ind. Ct. App. 1997).

## Section 1 – The trial court did not err by including Husband's contractual interest in the Real Estate in the marital estate.

[7]    Husband contends that findings 24, 29, 30, and 48 of the Order are clearly erroneous insofar as they treat the value of his contractual interest in the Real Estate as a divisible marital asset.[2] In addressing his contention, we are guided by the following principles:

> [I]n a dissolution action, all marital property goes into the marital pot for division, whether it was owned by either spouse before the marriage, acquired by either spouse after the marriage and before final separation of the parties, or acquired by their joint efforts. Ind. Code § 31-15-7-4(a). For purposes of dissolution, property means all the assets of either party or both parties. Ind. Code § 31-9-2-98. The requirement that all marital assets be placed in the marital pot is meant to insure that the trial court first determines that value before endeavoring to divide property. Indiana's "one pot" theory prohibits the exclusion of any asset in which a party has a vested interest from the scope of the trial court's power to divide and award. While the trial court may decide to award a particular asset solely to one spouse as part of its just and reasonable property division, it must first include the asset in its consideration of the marital estate to be divided. The

---

[2] Husband does not challenge the trial court's findings that he made payments on the Contract and paid for the insurance and property taxes on the Real Estate using marital assets during the marriage. Appealed Order at 7 (finding 29).

systematic exclusion of any marital asset from the marital pot is
erroneous.

*Falatovics v. Falatovics*, 15 N.E.3d 108, 110 (Ind. Ct. App. 2014) (emphasis in
*Falatovics* omitted) (citations and quotation marks omitted).

[8]     Specifically, Husband argues that the Real Estate is not a divisible marital asset
because it is not owned by the parties. *See Estudillo v. Estudillo*, 956 N.E.2d
1084, 1091 (Ind. Ct. App. 2011) ("[A] trial court may not distribute property
not owned by the parties."). According to Husband, (1) Sellers are the titled
owners of the Real Estate; (2) Husband's "standing relative to the Real Estate is
that of a purchaser having certain contractual rights who, conditionally, may
eventually receive legal title to the Real Estate assuming fulfillment of certain
terms and obligations as set forth within the Contract"; and (3) to the extent
Husband has an interest in the Real Estate, "it an equitable interest which the
trial court is without authority to distribute." Appellant's Br. at 10. To support
his position, Husband relies on the following general rule: "[A]n equitable
interest in real property, titled in a third party, although claimed by one or both
of the divorcing parties, should not be included in the marital estate." *Id.*
(quoting *Estudillo*, 956 N.E.2d at 1091). This rule has been acknowledged
several times by Indiana courts, including the Indiana Supreme Court, and
appears to have originated in *In re Marriage of Dall*, 681 N.E.2d 718, 722 (Ind.
Ct. App. 1997). *See Vadas v. Vadas*, 762 N.E.2d 1234, 1235-36 (Ind. 2002)
(quoting *Dall*); *Estudillo*, 956 N.E.2d at 1091 (citing *Dall*); *Nicevski v. Nicevski*,

909 N.E.2d 446, 449 (Ind. Ct. App. 2009) (quoting *Dall*), *trans. denied*; *In re Marriage of Bartley*, 712 N.E.2d 537, 545 (Ind. Ct. App. 1999) (citing *Dall*).

[9] We begin our analysis with an examination of *Dall*. There, the wife's parents purchased a lot and provided nearly all the resources to build a home on the lot for the wife, husband, and their children. When the lot was first acquired, the parties apparently had an oral agreement that title would be conveyed to the wife and husband sometime in the future. However, the wife's mother "refused the couple's request to convey title during construction of the home, and the parties were unable to come to any agreement after that time." 681 N.E.2d at 720. When the husband filed for dissolution, the wife's parents still owned record title to the property.

[10] Despite the fact that the wife's parents had record title to the property, the trial court included the value of the property in the Dalls' marital estate. The wife appealed, contending that the property was not a marital asset. In addressing the issue, the *Dall* court observed,

> Case law has long established that an unvested interest in property is not divisible as a marital asset.... No one has vested rights in an ancestor's property until the latter's death.... Even some vested interests, such as remainders in which the spouses have no present possessory interest, are deemed too remote to be included in a property settlement.

*Id*. at 722 (quoting *Hacker v. Hacker*, 659 N.E.2d 1104, 1107 (Ind. Ct. App. 1995)). Thus, the *Dall* court reasoned, "an equitable interest in real property titled in a third-party, although claimed by one or both of the divorcing parties,

should not be included in the marital estate." *Id.*   The *Dall* court concluded that the trial court improperly included the value of the property in the marital estate, explaining,

> Neither [h]usband nor [w]ife holds a vested interest in the marital residence, and their purported equitable interest in the property is indeterminate. ….  Nor is there evidence that [w]ife will definitely acquire title to the home.  There are any number of circumstances that could prevent or discourage [wife's parents] from transferring title to [w]ife, thereby preventing her from acquiring ownership.

*Id.*  The *Dall* court reversed and remanded and clarified that, at most, "the trial court may consider the value of the [w]ife's continued possession and residence in the home in determining a just and equitable division of the marital assets." *Id.* at 723-24.[3]

[11]   Significantly, the *Dall* court attached the following footnote to the rule that an equitable interest in real property titled in a third party should not be included in the marital estate:

> *This rule would not apply where the real estate is titled in a third-party, and husband and/or wife are the contract purchaser.* In that case, the parties have a vested interest in the contract, which is a marital asset, and their equitable interest in the real estate is not indeterminate but is derived from the contract. Neither would the

---

[3] In reaching its decision, the *Dall* court relied on *Hacker*, 659 N.E.2d at 1111, in which another panel of this Court concluded that the trial court, in determining a just and reasonable division of the marital estate, properly considered husband's present possessory interest in the family farm on which he lived rent-free as an economic circumstance of the parties.

> rule apply where the real estate is titled in a partnership, corporation or other business organization in which the spouse has an ascertainable interest as a partner, shareholder or member.

*Id*. at 722 n.5 (emphasis added). Given these limitations, the rule in *Dall* may be considered an overstatement. Unfortunately, subsequent cases that cited *Dall* did not acknowledge the limitations in the footnote. Those cases, however, did not involve the circumstances described in the footnote. *See Vadas*, 762 N.E.2d at 1235-36 (trial court properly excluded marital home from marital estate where couple lived in home that husband sold to his father before couple got married and couple never became financially able to buy back the house as expected); *Estudillo*, 956 N.E.2d at 1091 (trial court did not err in excluding real estate from marital estate where, just prior to wife's filing for dissolution, husband transferred title to real estate to his adult daughter from a prior relationship); *Nicevski*, 909 N.E.2d at 449 (trial court erred in including marital home in marital estate where husband and wife lived in marital home legally titled to husband's parents, husband and wife disputed origin of money used to purchase the home, and husband's parents were not joined as necessary nonparties); *Marriage of Bartley*, 712 N.E.2d at 545 (social security widow's benefits from prior marriage that she forfeited during her marriage to husband could not be considered in distributing marital estate).

[12] Returning to Husband's claim that any interest he has in the Real Estate is an equitable interest and, pursuant to *Dall*, an equitable interest should not be included in the marital estate, we observe that Husband does not acknowledge

the *Dall* court's footnote that "the rule does not apply where the real estate is titled in a third-party, and husband and/or wife are the contract purchaser." 618 N.E.2d at 722 n.5. Here, unlike *Dall* and the aforementioned cases, Husband and Sellers have executed a written contract for Husband's purchase of the Real Estate. Husband has a vested interest in the Contract, and his equitable interest in the Real Estate is not indeterminate but is derived from the Contract. *See id*. He will obtain title to the Real Estate upon his full performance with and payment of the amount due under the Contract. As such, the general rule announced in *Dall*, that an equitable interest in real property titled in a third party should not be included in the marital estate, does not apply to the circumstances present in this case.

[13] Our supreme court's discussion in *Skendzel v. Marshall*, 261 Ind. 226, 301 N.E.2d 641 (1973), regarding the ownership of property purchased via land contract supports our determination. In *Skendzel*, our supreme court held as follows:

> Under a typical conditional land contract, the vendor retains legal title until the total contract price is paid by the vendee. Payments are generally made in periodic installments. Legal title does not vest in the vendee until the contract terms are satisfied, but equitable title vests in the vendee at the time the contract is consummated. When the parties enter into the contract, all incidents of ownership accrue to the vendee. The vendee assumes the risk of loss and is the recipient of all appreciation in value. The vendee, as equitable owner, is responsible for taxes. The vendee has a sufficient interest in land so that upon sale of that interest, he holds a vendor's lien.

This Court has held, consistent with the above notions of equitable ownership, that a land contract, once consummated constitutes a present sale and purchase. The vendor has, in effect, exchanged his property for the unconditional obligation of the vendee, the performance of which is secured by the retention of the legal title. The Court, in effect, views a conditional land contract as a sale with a security interest in the form of legal title reserved by the vendor. Conceptually, therefore, the retention of the title by the vendor is the same as reserving a lien or mortgage. Realistically, vendor-vendee should be viewed as mortgagee-mortgagor. To conceive of the relationship in different terms is to pay homage to form over substance.

*Id*. at 234, 301 N.E.2d at 646 (citations and quotation marks omitted).

[14] Here, pursuant to the Contract, Husband enjoys full use and occupancy of the Real Estate, pays taxes on it, and maintains the insurance. He, not Sellers, bears the risk of loss and will benefit from any appreciation in value of the Real Estate. Upon Husband's full performance and payment of all sums due under the Contract, the Sellers are obligated to convey to Husband the Real Estate by warranty deed. Sellers' retention of the legal title to the Real Estate is akin to a mortgage on the Real Estate. Husband argues that given the many restrictions in the Contract, it should be considered more like an automobile lease. We are unpersuaded. Accordingly, we conclude that the trial court did not err by including Husband's contractual interest in the Real Estate in the marital estate.

## Section 2 – The trial court did not abuse its discretion in valuing the Real Estate.

[15] Husband also contends that the trial court erred in valuing the Real Estate. "We review a trial court's decision in ascertaining the value of property in a dissolution action for an abuse of discretion." *Balicki v. Balicki*, 837 N.E.2d 532, 536 (Ind. Ct. App. 2005), *trans. denied* (2006). Generally, a trial court does not abuse its discretion if the court's chosen valuation is within the range of values supported by the evidence. *Crider v. Crider*, 15 N.E.3d 1042, 1056 (Ind. Ct. App. 2014)*, trans. denied*. "[T]he burden of producing evidence as to the value of the marital property rests squarely 'on the shoulders of the parties and their attorneys.'" *Galloway v. Galloway*, 855 N.E.2d 302, 306 (Ind. Ct. App. 2006) (quoting *Perkins v. Harding*, 836 N.E.2d 295, 302 (Ind. Ct. App. 2005)). "A valuation submitted by one of the parties is competent evidence of the value of property in a dissolution action and may alone support the trial court's determination in that regard." *Alexander v. Alexander*, 927 N.E.2d 926, 935 (Ind. Ct. App. 2010) (quoting *Houchens v. Boschert*, 758 N.E.2d 585, 590 (Ind. Ct. App. 2001), *trans. denied*), *trans. denied*.

[16] Here, Husband submitted an appraisal valuing the Real Estate at $303,000. Wife provided evidence that the Real Estate was worth $379,000. The trial court weighed the evidence and determined that the value of the Real Estate was $303,000. On appeal, Husband argues that the trial court erred in relying on the appraiser's valuation because the valuation was based on a fee simple interest that could be sold in an unrestricted sale. Husband maintains that his

interest in the Real Estate is restricted because the Contract does not permit him to prepay the purchase price or sell or assign his interest without the Sellers' consent, and he has no current ability to leverage or liquidate any equity that he may have. He also asserts that under the terms of the Contract, his interest in the Real Estate could be forfeited.

[17] We observe that Husband submitted the appraisal he now takes issue with and called the appraiser as a witness but did not question her as to how the Contract provisions affected the value of his interest in the Real Estate. Other than the appraisal and Wife's valuation evidence, Husband directs us to no evidence in the record assigning a value to the Real Estate. We conclude that the trial court's valuation of the Real Estate is supported by the evidence and therefore find no abuse of discretion.

## Section 3 – The trial court did not abuse its discretion in excluding evidence.

[18] Finally, Husband asserts that the trial court erred in excluding testimony from Hoover (one of the Sellers) and corresponding exhibits. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Reed v. Bethel*, 2 N.E.3d 98, 107 (Ind. Ct. App. 2014). A trial court does not abuse its discretion unless its decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* Any error in a ruling to admit or exclude evidence does not constitute reversible error unless it affects a substantial right of the party. Ind. Evidence Rule 103.

[19] At trial, Husband attempted to elicit testimony from Hoover "to illuminate certain conditions of the [C]ontract" and to explain "why she, as Seller, would not allow [Husband] to sell or assign his interest in the [C]ontract and would be deemed reasonable in reaching such a decision." Appellant's Br. at 16. At this point, the Contract had already been admitted. Wife objected to the proposed testimony and the corresponding exhibits on the grounds that the terms of the Contract spoke for themselves, the trial court could interpret the Contract within its four corners, and parol evidence was inappropriate. The trial court sustained the objection and excluded the evidence.

[20] Husband submitted exhibits 226 and 247 as offers of proof. Second Amended Ex. Vol. 6 at 3, 5-6. Exhibit 247 is a list, prepared by Hoover and Husband's trial attorney, of reasons that Husband's sale of the Real Estate would be unreasonable. Apparently, Husband wanted to establish how difficult it would be to obtain Sellers' consent for him to sell his interest. The extreme difficulty in obtaining such consent, according to Husband, affects the value of his interest. Husband asserts that the evidence bore only on valuation and not the interpretation of the Contract. We disagree. The evidence clearly was meant to show Hoover's interpretation of the Contract provision that prohibited Sellers and Husband from selling or assigning their interests in the Contract and Real Estate without written consent of the other, provided, however, that "any consent shall not be unreasonably withheld." Amended Ex. Vol. 3 at 73.

[21] "Interpretation and construction of contract provisions are questions of law." *John M. Abbott, LLC v. Lake City Bank*, 14 N.E.3d 53, 56 (Ind. Ct. App. 2014).

> The four corners rule states that where the language of a contract is unambiguous, the parties' intent is to be determined by reviewing the language contained within the "four corners" of the contract, and "parol or extrinsic evidence is inadmissible to expand, vary, or explain the instrument unless there has been a showing of fraud, mistake, ambiguity, illegality, duress or undue influence."

*Id.* (quoting *Adams v. Reinaker*, 808 N.E.2d 192, 196 (Ind. Ct. App. 2004)). Based on the four corners rule, we conclude that the trial court did not abuse its discretion in excluding exhibit 247 and any testimony based on it. Aside from the four corners rule, we observe that Hoover's reasons justifying her opinion that Husband's sale of the Real Estate would be unreasonable are purely speculative, since no sale of any kind was under consideration and the circumstances surrounding any possible future sale are unknown.

[22] Exhibit 226 purports to be a list of some of the provisions in the Contract. Exhibit 226 offered nothing that was not already in the Contract. As such, the trial court did not abuse its discretion in excluding exhibit 226 and testimony based on it.

[23] Based on the foregoing, we affirm the trial court's order.

[24] Affirmed.

May, J., and Pyle, J., concur.